We'll hear argument next in the case of the United States v. Johnson. Good morning, Your Honor. Ms. Zerkouy. May I please address the court? My name is Nina Zerkouy. I'm a court-appointed attorney for Christopher Johnson. Your Honors, we are here today because the tenant challenged the application note 3FI of Sentencing Commission and claimed that it's not enforceable under Kaiser v. Wilkie, the new Supreme Court case that we believe changed the landscape of our test, as well as... Has any decision of the Supreme Court ever overruled Stinson? No, Your Honor, and I'm getting to that right away. So then what do we do about the Supreme Court's insistence that only it can overrule its own decisions? Your Honor, we believe that indirectly it affected Stinson, and the reason why that's our position... And we understand there is split in the circuits, that some circuits have found that Kaiser affected Stinson, others believe that they did not overrule it, and one court at least decided not to decide currently on it. Our position is that if Kaiser affects our test and Stinson applies our test word by word, then Kaiser affects Stinson. By that, I also want to point out that Stinson... The question is not whether Kaiser affects Stinson, but whether it overrules it. Has the Supreme Court ever said that it is proper for a court of appeals to depart from a decision of the Supreme Court that has not been expressly overruled, ever? I don't believe so, Your Honor. I don't believe so either. Well, based upon my review of this, they've actually said the exact opposite. That is, it's only the Supreme Court that has the authority to overrule its precedents. I can think of two cases. I found, too, there's probably a whole stack. There's a stack. But in Hone v. The United States in 1998, Justice Kennedy said this for a majority, and in State Oil v. Kong the year before in 1997, they said it affirmatively, that the lower federal courts are not to engage in tea-leave reading or the business of predictions or however you want to characterize it. So I'm just not so sure we have any latitude at all other than to follow Stinson unless and until the U.S. Supreme Court says it's overruled or otherwise has been modified by what they announced. But that's their province, not ours. Well, Your Honor, that certainly can't be this court's position. However, we do believe it modified to some degree Stinson because Stinson says that the commentary should be treated as agency's interpretation of its own legislative rules, and our test applies. Are we going to say that our test applies in one way for one department, in another way for another commission, and leave it modified for some but not modified for the others? And we do believe it's our position that Kaiser did affect Stinson, even though it's not directly addressing Stinson. I mean, the premise of that is that the United States Sentencing Commission and an executive branch department or agency are exactly the same. That's not entirely clear to me. It's not the same, and Stinson complained about it. But they said, despite the fact, the analogy is not complete. In that, government is correct because the government argued in Stinson that the commentary be treated as the agency interpretation of its own legislative rules. And if we start with that, despite the complaint, that commentary is treated as an agency interpretation of its own legislative rules, and the test that applies is our test, and then Kaiser goes and modifies that test, or at least cabins it, or at least gives it some outer bounds, then our argument is it did affect Stinson. That's what we start with. It's up to the court to decide at this point. And it might as well be that the remaining of the argument is not going to be useless at all if the court decides that Stinson is the law and Kaiser did not affect it or modify it. But should the court decide that possibly it modified it, then the question is, does this application note 3 of 5 change, and is it enforceable under Kaiser and Wilkie? And this is the main crux of our argument. Kaiser and Wilkie— Can I ask you something on the facts? I don't understand why both sides are talking about the concept of intended loss in this case. How does this case have anything to do with intended loss? For two reasons, Your Honor. When the district court found the note 3 of 5 enforceable, it also said it would have passed the same sentence and found the same loss amount if it didn't rely on 3 of 5, simply relied on the application note 3A, which means choose between intended loss and actual loss, and then based on having to estimate the loss amount, it would have relied on the intended loss. But it gets counterfactual. There's no concept of intended loss in this fact pattern, right? I mean, Mr. Johnson is shown to have stolen 4,000 credit card numbers or 4,200, whatever the number is that way. And then the $500 amount, the kind of loss proxy, if you will, was used to estimate, to approximate actual loss. I don't understand what intent has anything to do with this, and I don't understand why—I'm asking you that because it doesn't seem necessary for this panel to resolve this case to say a word about intended loss. And I agree with that, Your Honor. If this court says, for example, that the Kaiser affected Stinson and finds that 3 of 5 is either enforceable or not under Kaiser, then it does not need to go in it, for example, should the court find that the 3 of 5 is not enforceable. Now the question is—and this is the government's partly argument—is that, well, the decision should not be overturned because, well, the judge would have found the same thing under intended loss. That is basically what the government argues. We argue that should this court find that 3 of 5 is not enforceable under Kaiser, it should go for resentencing because there is an actual loss amount there that should be recalculated. The government claims that intended loss comes in, therefore it should not be remanded for resentencing. That is my understanding because the judge, the district court judge, did rely on intended loss as an alternative calculation to application no. 3 of 5. If I may go back, Your Honor, briefly, we find that in the Kaiser test, the genuinely ambiguous prong. The court needs to find first whether the regulation is genuinely ambiguous when all tools of interpretation are employed—text, structure, history, and policy. It is our position that any potential ambiguity in this regulation comes from the word loss and that loss is not a genuinely ambiguous word. The reason being is that when we look at text alone, ordinary meaning rules is that nobody would think of loss as something that hasn't been lost or that has an arbitrary minimum amount of $500. One dollar is a loss. Even if it's a very small loss, it's still a loss. The government here tries to introduce the Black's Law Dictionary to claim that intended loss, for example, could be loss. I don't think Black's Law Dictionary should be a dictionary of ordinary meaning for a reason, but we do think that loss in everyday language does not have a bottom $500 limit. As far as the structure itself of the regulation, another thing that we need to look at, I think there is a support here that anything under $500 is also loss. Government here wants to introduce a relevant conduct guideline to explain that harm is the same as loss. I don't believe it is. They think that because all harm can come into a calculation of offense conduct and guideline range, therefore that guideline itself somehow affects the common 3FI, which we believe is not a sound argument because the guideline for relevant conduct is a general guideline. It refers to all possible criminal conduct, including attempted robberies, and is much broader than loss in 2B1.1. I will address history and purpose, Your Honor, just because this is where the government's argument is probably the most developed and the strongest. Legislative history, as far as the comments go, should not be a backdoor for some sort of creating additional beauty in the word that is otherwise unambiguous. Particularly because the comments section offers two different interpretations of the loss. As a measure of a seriousness of offense, and on the other hand, as pecuniary harm. Non-economic harm is excluded. Again, one narrower. When the legislative history is conflicting, Supreme Court was clear that structure and text rules. And finally, our second part of the argument is that should this court find that this word is genuinely ambiguous, that no less than 500 per card is not a reasonable interpretation of the word loss, and just because an amount is an average amount of loss per card does not automatically mean that it's a reasonable interpretation of the word loss. This would have to mean. Thank you, Counsel. Thank you. Mr. Flanagan. Thank you. May it please the court. My name is Peter Flanagan. I represent the United States. Your Honor, the district court properly deferred to the guideline commentary when calculating loss under guideline section 2B1.1. First, the district court properly deferred to application note 3FI and its $500 per device rule. This court has repeatedly upheld the application of this commentary under Stinson. Is this note among those that the commission is now in the process of moving into the text? It is not. To my understanding, it is not. Okay. Thank you. But despite the fact that the commission is not acting to move it into the text, this court has ruled on it under Stinson, as has been addressed already today, and that precedent remains good law even following the Kaiser decision. Second, even absent its deference to that special rule on loss, the court here was required to reasonably estimate the loss under application note 3C, and that included intended loss under application note 3A, and thus the district court reasonably looked to the well-supported $500 per card figure and calculated that estimate. Estimate of actual loss, though. I just don't see what intended loss has anything to do with this fact pattern. Your Honor, I'm not so sure of that because we are obviously operating first under the special rule of 3FI, which directs the $500 proxy for loss. But under this fact pattern, we are talking about thousands of credit cards that were purchased, just as the nature of this scheme is that the defendants, there's 22 in this case. Yeah, and I understand you can't trace all. I totally get that. You're not going to be able to trace it all out and get down to the last dollar of an actual precise loss measurement, so you're approximating. You're doing an estimate under a preponderance standard, but you have a defending here that's admitted to the theft, right? Admitted to the theft and purchase and the use or attempted use of those cards. Right, so you're using the $500 to estimate actual losses. I would be speaking against my own interest because I understand that it would be much easier for me to just say yes, but I do think the fact that this defendant... Yeah, in other words, if the authorities had rolled in after he stole the 4200 devices, and they rolled in and arrested him, then you might have an intended loss situation. Well, in this situation, there may well have been instances where the defendant obtained the cards, but they were canceled or expired and were not usable by the time the defendant got around to using them. So in those instances, no actual losses would have been accrued on the card, and for that reason, we'd be relying on the concept of intended loss in that case. So I think that the $500 special rule is best viewed, as Your Honor referred to it, as a proxy for loss, but I would say it would wrap in intended loss as well as actual loss. So what's the government's position on the Kaiser-Stinson issue? Yeah, well, it is absolutely that Stinson is still good law. The Kaiser decision said that Stinson, which is obviously reached by analogy through Auer and Seminole Rock, and the Kaiser said that Auer and Seminole Rock are still good law. That was made explicitly clear. Is that what the Solicitor General is telling the Supreme Court? I have the same question as Judge Scudder, because the first of these cases that I saw, United States against White, which was argued back in January, the prosecutor took the position that Kaiser had overruled Stinson, arguing for the United States, and we asked, can this really be your position? And the prosecutor said, well, it's my position. Right? Leading to the question, who speaks for the United States, or does every assistant U.S. attorney just make it up on the spot? Usually we would think the Solicitor General speaks for the United States. So what has the Solicitor General been telling the Supreme Court when these cases, and they're being decided all over the country, when somebody files a cert petition? The department's position is that Kaiser informs Stinson. Stinson remains good law. Kaiser does have an effect on the analysis in this sense. It clarifies. It complements Stinson. Where Stinson states that the commentary is valid so long as it's not inconsistent with the provision itself, Kaiser tells the courts and parties how to determine whether that inconsistency exists. Kaiser does so. It focuses on whether or not there's an ambiguity in the guidelines text and where the ambiguity exists, and so long as the commentary resolves it reasonably, by definition, the guidelines. Yeah, this is where it gets a little tricky because you all, I mean, this is my perception. I might be wrong. I mean, you're doing a bunch of gymnastics in the red brief. When you say loss is ambiguous, I think, really? How is it possibly ambiguous? It's one of the most common terms known in law. There may be hard applications of it or some questions that arise at the fringes, but the United States' position is that the term loss is ambiguous? It is, Judge, and I think what this court directs that we look to the ordinary meaning of that. And that seems to me like you're taking that position because you're trying to force fit it into a Kaiser analytical framework. Well, the Department's position is absolutely, I do answer to others, that we do take the position that Kaiser applies since it remains good law, but Kaiser does affect the analysis of our guidelines commentary as it relates to Kaiser. I'm sure the Solicitor General calls it a sophisticated position, whereas others might be inclined to call it wishy-washy. I don't consider it wishy-washy. Certainly, speaking for the government, we don't consider it wishy-washy. We are aware, and the government cited two of them in its 28-J letter recently. Courts have found that there's Stinson on one side and Kaiser's got nothing to do with it. We certainly know that. If Stinson applies, I don't know why you just don't say, go read note 3F1, the case is over. Well, we do. It's over. The district court did a simple math exercise, multiplied 500 by the number of the credit cards, and the case is over. It is because the Department's position is that Kaiser has informed Stinson. Well, if Kaiser does inform or throw a cross light on whatever you want to call it on Stinson, do you still win? Absolutely, Judge. Why? The reason why, and this dovetails back into what Judge Scudder was asking, why would we consider loss ambiguous? There's two questions really at issue in answering Judge Ripple's question. Is it ambiguous and does the commentary reasonably interpret the provision at issue? As to what it being ambiguous, first this court directly looked at the ordinary meaning of the term when it's undefined, and here dictionaries are a source of information for determining ordinary meaning. There are many different definitions, a whole range of meanings that you find in dictionaries, but I think more importantly it comes from Kaiser itself when assessing whether there's an ambiguity. Kaiser provided a test to look to the structure, the history, and the purpose of the provision at issue. Here, history and purpose, well, the background of the commentary provides that it includes both. We're going to try and hold the fraud defendant responsible for the seriousness of this offense as measured by both actual and intended loss. Then if you consider the structure, the relevant conduct guideline, 1B.1.3A.3, and that's text. That's text of the guideline. That's something that I don't think anyone in here could say that any party could ignore. The structure, that provision says that we look not just to actual law, actual harms or the harms that resulted, but also harms that were the object of the conduct, in other words, intended loss. So when you bake all that in, loss is actually a more loaded term, I think, than you might think at first blush. We have to account for all these different factors. And even once you get to the point where you say, okay, 1B.1.3A.3 applies, so we're left with a term loss that at a bare minimum includes actual and intended loss, then you still have more questions about what is limited, what kinds of loss should apply in certain kinds of cases, and that's why we think that this particular commentary survives Kaiser and remains good law. See, my time is up. Unless there are any further questions for me, which I'm obviously happy to answer, we respectfully ask you to affirm the defendant's conviction and sentence. Thank you. Ms. Zarkoui, we appreciate your willingness to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.